John C. Carpenter – State Bar No. 155610
Sark Ohanian – State Bar No. 208905
**CARPENTER, ZUCKERMAN & ROWLEY, LLP**
8827 W. Olympic Boulevard
Beverly Hills, California 90211
Tel.: (310) 273-1230 / Fax: (310) 858-1063

Attorneys for Plaintiff,
Laura Taylor



FILED
CLERK, U.S. DISTRICT COURT

MAY 30 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                         DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| LAURA TAYLOR,<br><br>                              Plaintiff,<br><br>vs.<br><br>WHIRLPOOL CORPORATION, a business entity of unknown form; MAYTAG CORPORATION, a business entity of unknown form; MAYTAG SALES, INC., a business entity of unknown form; BEST BUY CO., INC., a business entity of unknown form; BEST BUY, a business entity of unknown form; and DOES 1 through 100, inclusive,<br><br>                              Defendants. | **Case No.:** 2:12-cv-09585-FMO-FFM<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES**<br><br>1.   FRAUDULENT CONCEALMENT<br>2.   NEGLIGENCE<br>3.   STRICT PRODUCTS LIABILITY<br>4.   BREACH OF EXPRESS WARRANTY<br>5.   BREACH OF IMPLIED WARRANTY<br><br>**[DEMAND FOR JURY TRIAL]**<br><br>Judge: Hon. Fernando M. Olguin<br>Courtroom: 22 |

**COMES NOW** the plaintiff LAURA TAYLOR for causes of action against the defendants, and each of them, including DOES 1 through 100, inclusive, and each of them, complains and alleges as follows:

/ / /

/ / /

## PARTIES

1.     Plaintiff LAURA TAYLOR is, and at all times relevant hereto was, a resident of the County of Los Angeles in the State of California.

2.     Defendant WHIRLPOOL CORPORATION is a business entity of unknown form which was and is authorized to do business within the State of California, and was and is engaged in the business of deriving profit from designing, manufacturing, warning, advertising, promoting, installing, servicing, and importing home appliances for sale within the County of Los Angeles, California.

3.     Defendant MAYTGAG CORPORATION is a business entity of unknown form which was and is authorized to do business within the State of California, and was and is engaged in the business of deriving profit from designing, manufacturing, warning, advertising, promoting, installing, servicing, and importing home appliances for sale within the County of Los Angeles, California.

4.     Defendant MAYTGAG SALES, INC. is a business entity of unknown form which was and is authorized to do business within the State of California, and was and is engaged in the business of deriving profit from designing, manufacturing, warning, advertising, promoting, installing, servicing, and importing home appliances for sale within the County of Los Angeles, California.

5.     Defendant BEST BUY CO., INC. is a business entity of unknown form which was and is authorized to do business within the State of California, and was and is engaged in the business of deriving profit from designing, manufacturing, warning, advertising, promoting, installing, servicing, and importing home appliances for sale within the County of Los Angeles, California.

6.     Defendant BEST BUY is a business entity of unknown form which was and is authorized to do business within the State of California, and was and is engaged in the business of deriving profit from designing, manufacturing, warning, advertising, promoting, installing, servicing, and importing home appliances for sale within the County of Los Angeles, California.

SECOND AMENDED COMPLAINT FOR DAMAGES                    CASE NO. CV 12-9585 FMO (FFMx)

7.   Defendant Best Buy Stores, L.P. has responded to plaintiff's initial Complaint stating that it was erroneously sued and served as Best Buy Co., Inc. and Best Buy.  All references to "BEST BUY" mean Best Buy Co., Inc., Best Buy, and Best Buy Stores, L.P.

8.   Defendant DOE 1 is a natural person residing and domiciled in the County of Los Angeles, State of California who installed, serviced, and maintained the home appliances which are the subject of this litigation.

9.   The true names and/or capacities, whether individual, corporate, associate or otherwise of the defendants DOES 1 through 100 (hereinafter "Does 1 through 100"), inclusive, and each of them, are unknown to plaintiff who therefore sue said defendants by such fictitious names.  Plaintiff is informed and believes and thereon alleges that each of these defendants fictitiously named herein as a DOE is legally responsible, negligent or in some other actionable manner liable for the events and happenings hereinafter referred to, and proximately and legally caused the injuries to plaintiff as hereinafter alleged.  Plaintiff will seek leave of the Court to amend this Complaint to insert the true names and/or capacities of such fictitiously-named defendants when the same has been ascertained.

10.   Defendants WHIRLPOOL CORPORATION, MAYTAG CORPORATION, MAYTAG SALES, INC., BEST BUY, DOES 1 through 100 are collectively referred to herein as "Defendants."

## GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

11.   Plaintiff Laura Taylor purchased a washing machine and dryer at a retail store which is located at or near Pasadena, California.  Said retail store was owned, operated, managed, and controlled by Defendants Best Buy.  Plaintiff hired Defendants Best Buy and Does 1 through 100 to install,  service, and maintain the washing machine and dryer at her home which is located at or near Altadena, California.

12.   Defendants Best Buy and Does 1 through 100 failed to competently and

correctly install, service, and maintain the home appliances as on the power source to the dryer, the defendants, without limitation, failed to install a strain relief and routed the neutral wire above the brass strap, as opposed to below the brass strap.

13.   After the installation and service of the washing machine and dryer, Defendants Best Buy and Does 1 through 100 released the home appliances to the plaintiff with the representation that said machines had been properly inspected, maintained, and repaired and therefore, considered safe to operate in all foreseeable manners and circumstances.

14.   On or about July 5, 2010, plaintiff touched the dryer and was electrically shocked sustaining, without limitation, a loss of consciousness, parathesia, trigeminal neuralgia, TMJ pain, hemihypoesthesia, cervical and lumbar radiculopathy, shoulder pain, knee pain, and problems with memory, concentration, speech fluency, sleeping, appetite, and libido.

15.   Defendants Best Buy and Does 1 through 100 sold and/or delivered plaintiff the household appliance containing defective parts that caused the shock and resulting damages and the defects have been concealed from the plaintiff causing injuries and damages as alleged in more detail herein.

16.   The aforesaid events and resulting injuries and damages to Plaintiff were caused by the defective household appliance, including its design, warning, manufacture, marketing, service, inspection, installation, distribution, and sale. At no time prior to the household appliance's shock event did any defendant provide any warning regarding the dangerous propensities within the household appliance.  At no time prior to the event on July 5,2010, did the appliance include a fail-safe device to prevent such shock events, although such a feasible alternate design was available and had been used by other manufacturers.

17.   Defendants misleadingly promised safety and trust, while at the same time purposely concealing evidence of defects in its household appliances from the public, and hiding its own knowledge of an alarming number of incidents of shock events,

electrocution events, deaths, and injuries.

18.     In the decades prior to this incident, the Defendants continuously and consistently promised safety for their appliances, and repeatedly promised a brand of "trust" to prospective purchasers of their appliances. The Defendants continuously denied any problems with their appliances, while during that same time period the Defendants received reports of similar shock and electrocution events.

19.     The defendant's household appliances were defective in design due to an inadequate fault detection system.

20.     Further, the absence of an electrocution override system by itself renders the appliances defective and unreasonably dangerous, and the appliances do not perform as safely as an ordinary consumer would expect.  Despite the feasibility and availability of an override system, the Defendants negligently and recklessly failed to an override system in its appliances.

21.     Plaintiff was, at all times relevant, ignorant of the existence of the defects described above and, knowing this, the Defendants continued to broadly disseminate statements about the safety and reliability of the subject appliance, while denying the existence of the defects.

22.     Does 1 through 100's fraudulent concealment scheme includes, but is not limited to, intentionally covering up and refusing to publicly disclose critical internal memoranda, design plans, studies, Notices of Action, Problem Detail Reports and other reports of failure and injury. Through such acts of fraudulent concealment, Does 1 through 100 were able to actively conceal from the public for years the truth about the existence of the dangerous shock and electrocution causing defects in their products, thereby tolling the running of any applicable statute of limitations.

23.     Any applicable statutes of limitation have been equitably tolled by Does 1 through 100's affirmative acts of fraud, fraudulent concealment, suppression and denial of the true facts regarding the existence of the defective electrocuting parts of their appliances.

24.     Does 1 through 100 are estopped from relying on any statutes of limitation because of their  fraudulent concealment and misrepresentations of the true facts concerning the dangerously defective product.

25.     Plaintiff is informed and believes, and thereupon alleges, that at all times relevant and mentioned herein, Defendants, and each of them, were at all times material hereto acting within the authorized course, scope and purpose of said agency and employment and that all of said acts were subsequently performed with the knowledge, acquiescence, ratification and consent of the respective principals, and the benefits thereof accepted by said principals.

26.     Plaintiff is informed and believes and thereon alleges that at all times mentioned herein, defendants, and each of them, including Does 1 through 100, inclusive, were the agents, servants, employees and/or joint venturers of their co-defendants, and were, as such, acting within the course, scope and authority of said agency, employment and/or venture and that each and every defendant, as aforesaid, when acting as a principal, was negligent in the selection and hiring of each and every other defendant as an agent, employee and/or joint venturer.

27.     Plaintiff is informed and believes, and thereupon alleges that all of the acts, conduct, and nonfeasance herein carried out by each and every representative, employee or agent of each and every corporate or business defendant, were authorized, ordered, and directed by the respective defendant's corporate or business employers, officers, directors and/or managing agents; that in addition thereto, said corporate or business employers, officers, directors and/or managing agents had advance knowledge of, authorized, and participated in the herein described acts, conduct and nonfeasance of their representatives, employees, agents and each of them; and that in addition thereto, upon the completion of the aforesaid acts, conduct and nonfeasance of the employees and agents, the aforesaid corporate and business employers, officers, directors and/or managing agents respectively ratified, accepted the benefits of, condoned and approved of each and all of said acts, conduct or nonfeasance of their co-employees, employers,

1   and agents.

2      28.   In addition, at all times herein relevant, each defendant, whether named

3   herein or designated as a DOE, was a principal, master, employer and joint venturer of

4   every other defendant, and every defendant was acting within the scope of said agency

5   authority, employment and joint venture.

6      29.   As a direct and proximate result of defects in the appliance and the wrongful

7   conduct, acts, omissions, and misrepresentations of Defendants, Plaintiff suffered

8   significant harm, conscious pain and suffering, physical injury and bodily impairment

9   resulting permanent physical deficits, permanent impairment and other sequelae likely to

10   continue manifesting in the future.

11      30.   As a further direct and proximate result of defects in the appliance and the

12   wrongful conduct, acts, omissions, and misrepresentations of Defendants, Plaintiff has

13   also incurred medical expenses and other economic harm including loss of earnings, and

14   lost earning capacity, and will continue to incur expenses and loss of earnings in the

15   future, as a direct and proximate result of the injuries alleged herein as a result of the use

16   of the appliance.

17      31.   As a further direct and proximate result of defects in the appliance and the

18   wrongful conduct, acts, omissions, and misrepresentations of Defendants, Plaintiff has

19   required medical treatment, and will continue to require reasonable and necessary health

20   care, attention and services, and Plaintiff has incurred, and continues to incur, medical,

21   incidental, and service expenses pertaining to the injuries.  As a further direct and

22   proximate result of the acts and omissions of defendants, plaintiff has suffered a loss of

23   earnings will be prevented from pursing gainful employment and/or business ventures in

24   the future, and therefore he will suffer lost future earnings and income, and/or a

25   diminution of his future earning capacity.  Said damages are in a sum the exact amount

26   of which is not yet known to plaintiff, but which amount will be proved at the time of

27   trial.  As a further direct and proximate result of the above-described despicable acts by

28   defendants, plaintiff has been harmed in that he has suffered and will continue to suffer

SECOND AMENDED COMPLAINT FOR DAMAGES             CASE NO. CV 12-9585 FMO (FFMx)

mental anguish, and severe emotional and physical distress. Said damages are in a sum in excess of the jurisdictional limit of this Court, the exact amount of which is not yet known to plaintiff, but which amount will be proved at the time of trial.

32. The acts, conduct, and omissions of Does 1 through 100 as alleged throughout this Complaint were fraudulent, wilful and malicious and were done with a conscious disregard for the rights of the Plaintiff and users of the similar appliances and for the primary purpose of increasing profits. Does 1 through 100's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against Does 1 through 100 in an amount appropriate to punish and make an example of Does 1 through 100. Prior to the manufacturing, sale and distribution of the appliance, Does 1 through 100 knew that said products were in a defective condition as previously described herein and knew that those who purchased or used such appliances would experience and did experience severe physical, mental, and emotional injuries. Further, Does 1 through 100 through their officers, directors, managers, and agents, had knowledge that the subject appliance presented a substantial and unreasonable risk of harm to the public, and as such, were unreasonably subjected to risk of injury or death. Despite such knowledge, Does 1 through 100 acting through their officers, directors and managing agents for the purpose of enhancing Does 1 through 100's profits, knowingly and deliberately failed to remedy the known defects in the product and failed to warn the public, including Plaintiff, of the extreme risk of injury occasioned by said defects inherent in the product. Does 1 through 100 and their individual agents, officers, and directors intentionally proceeded with the manufacturing, sale, and distribution and marketing of the subject appliance knowing persons would be exposed to serious danger in order to advance Does 1 through 100's own pecuniary interest and monetary profits. Does 1 through 100's conduct was fraudulent, despicable, and so contemptible that it would be looked down upon and despised by ordinary decent people, and was carried on by Does 1 through 100 with wilful and conscious disregard for the safety of Plaintiff, entitling Plaintiff to exemplary damages.

# FIRST CAUSE OF ACTION

## Fraudulent Concealment

### [Against Defendants DOES 1 – 100 Only]

33.   Plaintiff incorporates by reference, as though fully set forth herein, each and every allegation and statement contained in the foregoing paragraphs.

34.   As alleged herein, Does 1 through 100 knew that certain of the appliances it installed, serviced, maintained, and distributed, in the State of California contained defects causing users to become shocked or electrocuted and, at all times relevant, Does 1 through 100 concealed and suppressed this material fact from Plaintiff.

35.   At all times relevant, Does 1 through 100 had exclusive and superior knowledge of the defects and concealed, suppressed and failed to disclose the true facts to Plaintiff who, at all times relevant, was ignorant of and was unaware of the existence and nature of the defects. Does 1 through 100 therefore had a duty to disclose the nature and existence of the defects before and after the appliance was purchased. Had defendants disclosed the whole truth about the existence and nature of the defects, Plaintiff would have not purchased the appliance/installation/service/maintenance.

36.   As alleged herein, Does 1 through 100 made repeated statements to Plaintiff, touting the safety and reliability of the subject appliance as maintained, installed and/or serviced.  These statements were untrue as the appliances were defective and dangerous.

37.   At all times relevant, Does 1 through 100 intentionally concealed and suppressed the nature and extent of the defects with the intent to defraud Plaintiff.

38.   Plaintiff was at all times relevant, unaware and ignorant of the nature and existence of the defects in the subject appliance.

39.   At all times relevant, Does 1 through 100 purposefully and intentionally devised its scheme of concealment and suppression of the true facts concerning the existence and nature of the defects.

40.   As a direct and proximate result of defects in the appliance and the wrongful

conduct, acts, omissions, and fraudulent misrepresentations of Does 1 through 100, Plaintiff suffered the injuries and damages as alleged herein.

## SECOND CAUSE OF ACTION

### Negligence

[Against All Defendants and DOES 1 – 100]

41.    Plaintiff incorporates by reference, as though fully set forth herein, each and every allegation and statement contained in the foregoing paragraphs.

42.    Plaintiff Laura Taylor purchased the subject appliance at the retail store owned, operated and controlled by the defendants.

43.    As stated above, the appliance was installed and serviced by the defendants in the plaintiff's home.

44.    Plaintiff is informed and believes, and thereupon alleges that the defendants failed to competently and correctly perform the installation and servicing of the appliance.

45.    After the installation and servicing, the defendants released the appliance to plaintiff with the representation that said appliance had been properly inspected, maintained, installed, serviced, and repaired and therefore, considered safe to operate in all foreseeable manners and circumstances.

46.    On or about July 5, 2010, plaintiff was electrocuted when she touched the appliance.

47.    Plaintiff is informed and believes, and thereupon alleges that the defendants, knowingly failed to competently and correctly perform the above-referenced installation, service, repair, and maintenance.

48.    Plaintiff is informed and believes, and thereupon alleges, that at all times relevant hereto, defendants were engaged in the business of manufacturing, fabricating, designing, assembling, distributing, buying, selling, leasing, placing into the stream of commence, labeling, inspecting, testing, analyzing, servicing, repairing, marketing,

-10-

promoting, warranting, analyzing, maintaining, controlling, installing, fitting, entrusting, managing, advertising, supervising the use of, making representations about and/or warning of defects in, or dangers associated with the use of, the subject household appliance and its model lines, including all component parts, and had a duty to manufacture, fabricate, design, assemble, distribute, buy, sell, install, maintain, inspect, test analyze, service, repair, market, warrant, maintain, control, install, fit, entrust, manage, advertise, supervise the use of, make representations about and/or warning of defects in, or dangers associated with the use of the appliance and its model line, including all component parts, in a reasonable manner, which said defendants knew, or in the exercise of reasonable care should have known, would be used without inspection for defects and dangers.

49.     Plaintiff is informed and believes, and thereupon alleges that the electrocuting mechanism of the subject appliance and all other appliances in the model line were and are substantially similar in design and manufacture.

50.     Plaintiff is informed and believes, and thereupon alleges, that at all times relevant hereto, defendants and each of them, including their employees, agents, directors, officers, stockholders, partners and associates, had a legal duty to adequately and properly manage and operate their business and their manufacturing, servicing, installation, distribution, and retail operations; to adequately and properly train and supervise their employees and agents, including their designers, installers, servicors, inspectors, quality control agents and other manufacturing, testing, distribution and delivery personnel; and to act without negligence, or other wrongful conduct.

51.     Plaintiff is informed and believes, and thereupon alleges, that at all times relevant hereto, defendants and each of them, breached their above-mentioned duties by negligently, recklessly, and/or carelessly manufacturing, fabricating, designing, assembling, distributing, buying, selling, inspecting, testing, analyzing, servicing, repairing, marketing, warranting, maintaining, controlling, installing, fitting, entrusting, managing, advertising, supervising the use of, making representations about and/or warning of defects in, or dangers associated with the use of, the subject appliance,

SECOND AMENDED COMPLAINT FOR DAMAGES                    CASE NO. CV 12-9585 FMO (FFMx)

including all component parts, thereby rendering the subject appliance unsafe and dangerous for use by users, consumers, and bystanders, which proximately caused the injuries and damages to plaintiff as alleged herein.

52.   Said failures by the aforementioned defendants, including the defendant designers, manufacturers, installers, servicers, distributors and retailers constituted a breach of the aforementioned duties that in a foreseeable manner, legally and proximately caused the serious and permanent injuries and other damage to plaintiff herein asserted.

53.   In addition, defendants and each of them, negligently and carelessly sold, designed, manufactured, fabricated, distributed, retailed, wholesaled, recommended, tested, modified, controlled, advertised, created, processed, prepared, constructed, packaged, utilized, provided, warranted, repaired, maintained, marketed, bought, leased, rented, vended, installed, handled, labeled, compounded, promoted, furnished, analyzed, inspected, supplied, and place into the stream of commerce, the aforementioned subject appliance including, but not limited to, its component parts, ingredients, packaging, attachments, associated warnings, and constituents thereof, and lack of the same.  Said negligence included, but was not limited to, supplying inadequate and improper on-product and other warnings and instructions regarding the defects and dangerous propensities of the aforementioned subject appliance.

54.   Plaintiff is informed and believes and thereupon alleges that defendants and each of them, as asserted above, negligently and carelessly failed to inform purchasers and users of said subject appliance and others, including plaintiff that the aforementioned subject appliance was defective and unsafe, and prone to electrical shock or electrocution of users, due to the aforementioned defects.

55.   Plaintiff is informed and believes and thereupon alleges that defendants and each of them, in conducting their business, and in selling, designing, manufacturing, fabricating, distributing, retailing, wholesaling, recommending, testing, modifying, controlling, advertising, creating, processing, preparing, constructing, packaging,

utilizing, providing, warranting, repairing, maintaining, marketing, leasing, renting, vending, installing, handling, labeling, promoting, advertising, furnishing, analyzing, inspecting, supplying, and placing into the stream of commerce the aforementioned subject appliance, either lacked or failed to use the knowledge and skill ordinarily possessed by similarly-situated persons, companies, designers, manufacturers, testers, assemblers, inspectors, installers, servicors, distributors, retailers and suppliers of such products.

56.     To the detriment of the health and safety of its consumers, defendants and each of them, ignored complaints and notices about the dangerously defective appliance.

57.     As herein asserted, plaintiff touched the defective appliance when it electrically shocked her and thereby legally and proximately caused her injuries and damages. Due to said defects in the subject appliance, plaintiff suffered injuries as set forth above.

58.     The defective and dangerous design, manufacture and performance of the subject appliance and the fact that it was unsafe for its intended use and purpose when employed in a reasonable and foreseeable manner by plaintiff was known to defendants and each of them, or in the exercise of reasonable care should have been known and discovered by the defendants, and each of them. Further, the defective and dangerous condition of the subject appliance were not made known to plaintiff by defendants and each of them.

59.     Plaintiff is informed and believes and thereupon alleges that defendants and each of them, knew of the risk of serious injury or death from said subject appliance due to the defectively designed and manufactured nature of the subject appliance and said defendants consciously decided to design, manufacture, distribute and/or sell said subject appliance in its defective state without adequate warning or proper instructions to owners and users of said appliance in order to save money, increase profits and prevent loss of sales. These despicable acts by said defendants were done to deliberately prevent the general public from becoming aware that the appliance was and continues to be unsafe,

-13-

dangerous and defective.

60.     Further, plaintiff is informed and believes and thereupon asserts that defendants and each of them, knew or in the exercise of reasonable care should have known of the many other earlier deaths, injuries, consumer complaints and lawsuits involving substantially similar shock or electrocution caused by defects in the subject appliance model line, including earlier versions and similar products, due to the inadequate and improper warnings and instructions, and said design and manufacturing defects, and failure to warn of the defects, in conscious disregard to the rights and safety of others, including plaintiff herein, said defendants chose not to design, redesign or repair the subject appliance in a proper and defect free manner, properly and fully recall the product in a timely manner, and/or adequately warn of the defects and dangers.

61.     In addition, plaintiff is informed and believes and thereupon alleges that the aforementioned acts, omissions, negligence, malfeasance, nonfeasance, despicable conduct, and conscious disregard by defendants and each of them, were done by employees of defendants, and each of them with the advance knowledge, authorization, approval, participation or ratification of the officers, directors and/or managing agents of defendants, and each of them.

62.     Plaintiff is informed and believes and thereupon alleges that the aforementioned acts, omissions and conduct malfeasance were done by the defendants and each of them.

63.     Plaintiff is informed and believes and thereupon alleges that information in the possession of defendants and each of them, regarding the defective and dangerous condition of the defective appliance moved upward through the structure of management to a point where corporate policy was formulated.

64.     Plaintiff is informed and believes and thereupon alleges that corporate policymakers and other persons who exercised discretionary authority and were authorized to make corporate policy on behalf of defendants and each of them, were in fact aware of risks to the safety of others posed by the defective and dangerous condition

of the subject appliance, including but not limited to the defective shock or electrocution causing mechanism, and chose not to take any corrective action.

65.     As a direct, legal and proximate result of the negligence, and carelessness on the part of the defendants, the appliance electrically shocked the plaintiff and caused injuries and losses to plaintiff.

66.     The aforementioned negligence and carelessness of the defendants directly, legally and proximately caused injuries that resulted in the injuries and losses to plaintiff as herein described.

67.     As a further direct and proximate result of the above-described acts by defendants, plaintiff has been harmed in that she has suffered and will continue to suffer mental anguish, and severe emotional and physical distress.  Said damages are in a sum in excess of the jurisdictional limit of this Court, the exact amount of which is not yet known to plaintiff, but which amount will be proved at the time of trial.

68.     As a further direct and proximate result of the acts and omissions of defendants, plaintiff has sustained severe and permanent injuries to her health, and severe shock to her nervous system, and was caused to suffer severe physical and mental pain.  Said damages are in a sum the exact amount of which is not yet known to plaintiff, but which amount will be proved at the time of trial.

69.     As a direct, proximate, and legal result of the acts and omissions by defendants, plaintiff suffered and will continue to suffer damages in a sum in excess of the jurisdictional limit of this Court, the exact amount of which is not yet known to plaintiff, but which amount will be proved at the time of trial.

70.     As a further direct and proximate result of acts and omissions of defendants, plaintiff was required to and did employ physicians, and other medical personnel to treat and care for her, and incurred additional medical expenses for hospital bills and other incidental medical expenses.  Plaintiff is informed and believe, and thereupon alleges, that she will be required to incur additional medical and sundry expenses in the future. Said damages are in a sum the exact amount of which is not yet known to plaintiff, but

1  which amount will be proved at the time of trial.

2      71.    As a further direct and proximate result of the acts and omissions of

3  defendants, plaintiff has suffered a loss of earnings and will be prevented from pursing

4  gainful employment and/or business ventures in the future, and therefore she will suffer

5  lost future earnings and income, and/or a diminution of his future earning capacity.  Said

6  damages are in a sum the exact amount of which is not yet known to plaintiff, but which

7  amount will be proved at the time of trial.

## THIRD CAUSE OF ACTION

### Strict Products Liability

[Against All Defendants and DOES 1 – 100]

12      72.    Plaintiff incorporates by reference, as though fully set forth herein, each and

13  every allegation and statement contained in the foregoing paragraphs.

14      73.    Plaintiff is informed and believes, and thereon alleges, that the

15  aforementioned subject appliance and its component parts and constituents thereof, or

16  lack of same, were defectively designed, manufactured, fabricated, distributed, sold,

17  retailed, wholesaled, recommended, tested, modified, controlled, advertised, created,

18  processed, prepared, constructed, packaged, utilized, provided, warranted, repaired,

19  maintained, marketed, leased, rented, vended, installed, handled, labeled, promoted,

20  furnished, analyzed, inspected, supplied, warned, and placed into the stream of

21  commerce by defendants.

22      74.    Defendants designed, manufactured, distributed and sold the subject

23  appliance and placed the subject appliance into the stream of commerce knowing that the

24  subject appliance would be used in its intended manner.

25      75.    At the time of the aforesaid events, the subject appliance which was being

26  used in a reasonably foreseeable manner, failed to perform as safely as an ordinary

27  consumer would have expected, failed to conform with its manufacturing specifications,

28  failed to contain adequate warnings, and its design was a substantial factor in causing

-16-

injuries.

76. As a direct and proximate result of defects in the subject appliance and the wrongful conduct, acts, omissions, and misrepresentations of defendants, Plaintiff suffered the injuries and damages as alleged herein.

77. Defendants manufactured, fabricated, designed, assembled, marketed, warranted, controlled, entrusted, managed, maintained, advertised, installed, serviced, inspected, maintained, repaired, and/or otherwise placed in the stream of commerce the subject appliance and model line, including all component parts thereof, which contained design and/or manufacturing defects and/or improper, defective, and dangerous and/or dangerously constructed that were capable of causing, and did cause, personal injuries to the users, consumers, and bystanders thereof, while being used in a reasonably foreseeable manner, thereby rendering the subject appliance and model line unsafe and dangerous for use by such users, consumers, and bystanders.

78. Plaintiff is informed and believes, and thereupon alleges, that at all times relevant hereto, the subject appliance and model line, including all or some component parts was defective when placed in the stream of commerce by defendants and was of such a nature that the defects would not be discovered in the normal course of inspection and/or use by users or consumers of the subject appliance and model line.

79. In addition, defendants negligently and carelessly sold, designed, manufactured, fabricated, distributed, retailed, installed, serviced, wholesaled, recommended, tested, modified, controlled, advertised, created, processed, prepared, constructed, packaged, utilized, provided, warranted, repaired, maintained, marketed, bought, leased, rented, vended, installed, handled, labeled, compounded, promoted, furnished, analyzed, inspected, supplied, and place into the stream of commerce, the aforementioned subject appliance including, but not limited to, its component parts, ingredients, packaging, attachments, associated warnings, and constituents thereof, and lack of the same. Said negligence included, but was not limited to, supplying inadequate and improper on-product and other warnings and instructions regarding the defects and

dangerous propensities of the aforementioned appliance.

80. Plaintiff is informed and believes and thereupon alleges that defendants and each of them, as asserted above, negligently and carelessly failed to inform purchasers and users of said appliance and others, including plaintiff that the aforementioned appliance was defective and unsafe, and prone to electrocution due to the aforementioned defects.

81. Plaintiff is informed and believes and thereupon alleges that defendants, in conducting their business, and in selling, installing, servicing, designing, manufacturing, fabricating, distributing, retailing, wholesaling, recommending, testing, modifying, controlling, advertising, creating, processing, preparing, constructing, packaging, utilizing, providing, warranting, repairing, maintaining, marketing, leasing, renting, vending, installing, handling, labeling, promoting, advertising, furnishing, analyzing, inspecting, supplying, and placing into the stream of commerce the aforementioned appliance either lacked or failed to use the knowledge and skill ordinarily possessed by similarly-situated persons, companies, designers, manufacturers, testers, assemblers, installers, servicors, inspectors, distributors, retailers and suppliers of such products.

82. To the detriment of the health and safety of its consumers, defendants consciously disregarded and ignored complaints and notices about the dangerously defective appliance.

83. As herein asserted, plaintiff was electrically shocked when she touched the subject appliance.

84. Due to said defects in the appliance, plaintiff suffered injuries and losses when the appliance failed to function adequately and safely.

85. The defective and dangerous design, manufacture and performance of the appliance  and the fact that it was unsafe for its intended use and purpose when employed in a reasonable and foreseeable manner by plaintiff was known to defendants or in the exercise of reasonable care should have been known and discovered by the defendants, and each of them.  Further, the defective and dangerous condition of the

-18-

subject appliance were not made known to plaintiff by defendants.

86.    Plaintiff is informed and believes and thereupon alleges that defendants knew of the danger of serious injury or death from said appliance due to the defectively designed and manufactured nature of the appliance and said defendants consciously decided to design, manufacture, distribute and/or sell said appliance in its defective state without adequate warning or proper instructions to owners and users of said appliance.

87.    Further, plaintiff is informed and believes and thereupon asserts that defendants knew or in the exercise of reasonable care should have known of the many other earlier deaths, injuries, consumer complaints and lawsuits involving substantially similar shock or electrocution caused by the appliance and its model line, including earlier versions and similar products, due to the inadequate and improper warnings and instructions, and said design and manufacturing defects, but in conscious disregard of the rights and safety of others, including plaintiff herein, said defendants nevertheless chose not to design, redesign or repair the appliance in a proper and defect free manner, properly and fully recall the product in a timely manner, and/or adequately warn of the defects and dangers.

88.    In addition, plaintiff is informed and believes and thereupon alleges that the aforementioned acts, omissions, negligence, malfeasance, nonfeasance, despicable conduct, and conscious disregard by defendants were done by employees of defendants, and each of them with the advance knowledge, authorization, approval, participation or ratification of the officers, directors and/or managing agents of defendants, and each of them.

89.    Plaintiff is informed and believes and thereupon alleges that information in the possession of defendants inclusive and each of them, regarding the defective and dangerous condition of the appliance, including but not limited to the electrical shock and electrocution risk moved upward through the structure of management to a point where corporate policy was formulated.

90.    Plaintiff is informed and believes and thereupon alleges that corporate

SECOND AMENDED COMPLAINT FOR DAMAGES          CASE NO. CV 12-9585 FMO (FFMx)

policymakers and other persons who exercised discretionary authority and were authorized to make corporate policy on behalf of defendants inclusive and each of them, were in fact aware of risks to the safety of others posed by the defective and dangerous condition of the appliance and chose not to take any corrective action.

91.   As a direct, legal and proximate result of the conduct on the part of the defendants described above, the appliance caused plaintiff to be electrically shocked.

92.   The aforementioned conduct of the defendants directly, legally and proximately caused injuries that resulted in the injuries and losses to plaintiff as herein described.

93.   As a further direct and proximate result of the above-described acts by defendants, plaintiff has been harmed in that she has suffered and will continue to suffer mental anguish, and severe emotional and physical distress. Said damages are in a sum in excess of the jurisdictional limit of this Court, the exact amount of which is not yet known to plaintiff, but which amount will be proved at the time of trial.

94.   As a further direct and proximate result of the acts and omissions of defendants, plaintiff has sustained severe and permanent injuries to her health, and severe shock to her nervous system, and was caused to suffer severe physical and mental pain. Said damages are in a sum the exact amount of which is not yet known to plaintiff, but which amount will be proved at the time of trial.

95.   As a direct, legal and proximate result of the conduct on the part of defendants, as alleged herein, plaintiff suffered and will continue to suffer damages in a sum in excess of the jurisdictional limit of this Court, the exact amount of which is not yet known to plaintiff, but which amount will be proved at the time of trial.

96.   As a further direct and proximate result of the acts and omissions of defendants, plaintiff has lost earnings and will be prevented from pursing gainful employment and/or business ventures in the future, and therefore she will suffer lost future earnings and income, and/or a diminution of his future earning capacity. Said damages are in a sum the exact amount of which is not yet known to plaintiff, but which

amount will be proved at the time of trial.

97.   As a further direct and proximate result of acts and omissions of defendants, plaintiff was required to and did employ physicians, and other medical personnel to treat and care for her, and incurred additional medical expenses for hospital bills and other incidental medical expenses.

98.   Plaintiff is informed and believes, and thereupon alleges, that she will be required to incur additional medical and sundry expenses in the future.  Said damages are in a sum the exact amount of which is not yet known to plaintiff, but which amount will be proved at the time of trial.

99.   As a further direct and proximate result of the acts and omissions of defendants, plaintiff will be prevented from pursing gainful employment and/or business ventures in the future, and therefore will suffer lost future earnings and income, and/or a diminution of her future earning capacity.  Said damages are in a sum the exact amount of which is not yet known to plaintiff, but which amount will be proved at the time of trial.

## FOURTH CAUSE OF ACTION

### Breach of Express Warranty

[Against All Defendants and DOES 1 – 100]

100.   Plaintiff incorporates by reference, as though fully set forth herein, each and every allegation and statement contained in the foregoing paragraphs.

101.   At all times herein mentioned, the defendants expressly warranted to plaintiff and the general consuming public, through print, media and television advertising and other express means, that the subject appliance and model line was of merchantable quality and was safe for its ordinary, intended, foreseeable and expected use, and that such use would not cause injuries of the nature herein-described to plaintiff. In addition, said defendants, and each of them, expressly warranted that there was no substantial risk of electrical shock or other inherent failures or defects in said subject

-21-

appliance and/or model line.

102.   Plaintiff is informed and believe, and thereupon allege, that at all times relevant hereto, defendants expressly warranted to the consuming public that the subject appliance and model line, including all component parts, was of merchantable quality, fit for the purpose for which it was to be used, and free from design, manufacturing and/or modification defects.

103.   Plaintiff is informed and believe, and thereupon allege, that at all times relevant hereto, the subject appliance was not of merchantable quality, fit for the purpose for which it was to be used, and/or free from design, manufacturing and/or modification defects.

104.   Plaintiff is informed and believes, and thereupon alleges, that at all times relevant hereto the subject appliance and model line was defectively designed and/or manufactured and imminently dangerous to users, consumers, and bystanders in that it was capable of causing, and, in fact, did cause, personal injuries to users, consumers and bystanders, while being used in a reasonably foreseeable manner, thereby rendering the subject appliance and model line unsafe and dangerous for use by users, consumers or bystanders.

105.   Plaintiff is informed and believes that the subject appliance was not of merchantable quality and was not as warranted by said defendants, thus constituting a breach of said warranty; and as a direct, legal and proximate result of plaintiff's reliance on said warranties and the breach of said warranties, plaintiff sustained the herein-described losses and damages.

106.   Plaintiff is informed and believes and thereupon asserts that said defendants, and each of them, received timely notice of said breach of warranties.

107.   Plaintiff is informed and believes and thereupon asserts that said defendants, and each of them, knew or, in the exercise of reasonable care, should have known of the dangerous, defective, unfit and unsafe condition of the aforementioned subject appliance and the fact that it was not safe or suitable for its intended use, nor of

merchantable, safe or operational quality.

108.   As a direct, legal and proximate result of the breaches of warranties on the part of the defendants, the subject appliance severely electrically shocked the plaintiff.

109.   The aforementioned breaches of warranties of the defendants, directly, legally and proximately caused injuries that resulted in severe and permanent injuries to plaintiff, and severe shock to her nervous system, and was caused to suffer extreme physical and mental pain.

110.   As a direct, legal and proximate result of the breaches of warranties by defendants, and the defective nature of the subject appliance , plaintiff suffered and sustained injuries, harm and losses, including loss and damage to valuable tangible items of personal property and other compensable damages.

111.   Due to said defects in the subject appliance, plaintiff suffered injuries and losses when the subject appliance failed to function adequately, safely, or as designed.

112.   The defective and dangerous design, manufacture, service, maintenance, installation, and performance of the subject appliance  and the fact that it was unsafe for its intended use and purpose when employed in a reasonable and foreseeable manner by plaintiff was known to defendants, or in the exercise of reasonable care should have been known and discovered by the defendants, and each of them.  Further, the defective and dangerous condition of the subject appliance were not made known to plaintiff by defendants.

113.   Plaintiff is informed and believes and thereupon alleges that defendants knew of the danger of serious injury or death from said subject appliance due to the defectively designed and manufactured nature of the subject appliance and said defendants decided to design, manufacture, install, service, distribute and/or sell said subject appliance in its defective state without adequate warning or proper instructions to owners and users of said subject appliance.

114.   Further, plaintiff is informed and believes and thereupon asserts that defendants, knew or in the exercise of reasonable care should have known of the many

-23-

other earlier deaths, injuries, consumer complaints and lawsuits involving substantially similar electrical shock or electrocution caused by the subject appliance and its model line, including earlier versions and similar products, due to the inadequate and improper warnings and instructions, and said design and manufacturing defects, said defendants nevertheless chose not to design, redesign or repair the subject appliance in a proper and defect free manner, properly and fully recall the product in a timely manner, and/or adequately warn of the defects and dangers.

115.   In addition, plaintiff is informed and believes and thereupon alleges that the aforementioned acts, omissions, and negligence by defendants  were done by employees of defendants, and each of them with the advance knowledge, authorization, approval, participation or ratification of the officers, directors and/or managing agents of defendants, and each of them.

116.   Plaintiff is informed and believes and thereupon alleges that the aforementioned acts and omissions were done by the defendants.

117.   Plaintiff is informed and believes and thereupon alleges that information in the possession of defendants regarding the defective and dangerous condition of the subject appliance model line moved upward through the structure of management to a point where corporate policy was formulated.

118.   Plaintiff is informed and believes and thereupon alleges that corporate policymakers and other persons who exercised discretionary authority and were authorized to make corporate policy on behalf of defendants and each of them, were in fact aware of risks to the safety of others posed by the defective and dangerous condition of  the subject appliance.

119.   Plaintiff is informed and believes and thereupon alleges that the entire corporate organization of the defendants acted negligently, in that persons in the management structure of said defendants, wherein corporate policy was formulated decided to proceed with the design, production, manufacture and marketing of the subject appliance model line despite knowledge of the defective and dangerous condition

of the subject appliance and the subject appliance.

120.   Plaintiff is informed and believes and thereupon alleges that authorized persons within the corporate hierarchy of the defendants acted negligently in that corporate policymakers and other persons who exercised discretionary authority and were authorized to make corporate policy decisions on behalf of said defendants did in fact compromise consumer safety by reducing costs and/or expediting production of the subject appliance.

121.   As a further direct and proximate result of the above-described acts by defendant,s plaintiff has been harmed in that she has suffered and will continue to suffer mental anguish, and severe emotional and physical distress.  Said damages are in a sum in excess of the jurisdictional limit of this Court, the exact amount of which is not yet known to plaintiff, but which amount will be proved at the time of trial.

122.   As a further direct and proximate result of the acts and omissions of defendants, plaintiff has sustained severe and permanent injuries to her health, and severe shock to her nervous system, and was caused to suffer severe physical and mental pain.  Said damages are in a sum the exact amount of which is not yet known to plaintiff, but which amount will be proved at the time of trial.

123.   As a direct, proximate, and legal result of the acts and omissions by defendants, plaintiff suffered and will continue to suffer damages in a sum in excess of the jurisdictional limit of this Court, the exact amount of which is not yet known to plaintiff, but which amount will be proved at the time of trial.

124.   As a further direct and proximate result of the acts and omissions of defendants, plaintiff has lost earnings and will be prevented from pursing gainful employment and/or business ventures in the future, and therefore she will suffer lost future earnings and income, and/or a diminution of her future earning capacity.  Said damages are in a sum the exact amount of which is not yet known to plaintiff, but which amount will be proved at the time of trial.

125.   As a further direct and proximate result of acts and omissions of defendants,

SECOND AMENDED COMPLAINT FOR DAMAGES                     CASE NO. CV 12-9585 FMO (FFMx)

plaintiff was required to and did employ physicians, and other medical personnel to treat and care for her, and incurred additional medical expenses for hospital bills and other incidental medical expenses.

126.   Plaintiff is informed and believes, and thereupon alleges, that she will be required to incur additional medical and sundry expenses in the future.  Said damages are in a sum the exact amount of which is not yet known to plaintiff, but which amount will be proved at the time of trial.

127.   As a further direct and proximate result of the acts and omissions of defendants, plaintiff will be prevented from pursing gainful employment and/or business ventures in the future, and therefore will suffer lost future earnings and income, and/or a diminution of his future earning capacity.  Said damages are in a sum the exact amount of which is not yet known to plaintiff, but which amount will be proved at the time of trial.

## FIFTH CAUSE OF ACTION
### Breach of Implied Warranty
[Against All Defendants and DOES 1 – 100]

128.   Plaintiff incorporates by reference, as though fully set forth herein, each and every allegation and statement contained in the foregoing paragraphs.

129.   At all times herein mentioned, the defendants, impliedly warranted to plaintiff and the general consuming public, through print, media and television advertising and other express means, that the subject appliance and model line was of merchantable quality and was safe for its ordinary, intended, foreseeable and expected use, and that such use would not cause injuries of the nature herein-described to plaintiff. In addition, said defendants, and each of them, impliedly warranted that there was no substantial risk of electric shock or electrocution in the subject appliance and/or model line.

130.   Plaintiff is informed and believe, and thereupon allege, that at all times

relevant hereto, defendants, inclusive and each of them, impliedly warranted to the consuming public that the subject appliance and model line, including all component parts, was of merchantable quality, fit for the purpose for which it was to be used, and free from design, manufacturing and/or modification defects.

131.   Plaintiff is informed and believe, and thereupon allege, that at all times relevant hereto, the subject appliance was not of merchantable quality, fit for the purpose for which it was to be used, and/or free from design, manufacturing and/or modification defects.

132.   Plaintiff is informed and believe, and thereupon allege, that at all times relevant hereto, the subject appliance was not of merchantable quality, fit for the purpose for which it was to be used, and/or free from reconditioning and restoring defects.

133.   Plaintiff is informed and believes, and thereupon alleges, that at all times relevant hereto the subject appliance and model line was defectively designed and/or manufactured and imminently dangerous to users, consumers, and bystanders in that it was capable of causing, and, in fact, did cause, personal injuries to users, consumers and bystanders, while being used in a  reasonably foreseeable manner, thereby rendering the subject appliance and model line unsafe and dangerous for use by users, consumers or bystanders.

134.   Said subject appliance was not of merchantable quality and was not as warranted by said defendants, thus constituting a breach of said warranty; and as a direct, legal and proximate result of plaintiff's reliance on said warranties and the breach of said warranties, plaintiff sustained the herein-described losses and damages.

135.   Plaintiff is informed and believes and thereupon asserts that said defendants, and each of them, received timely notice of said breach of warranties.

136.   Plaintiff is informed and believes and thereupon asserts that said defendants, and each of them, knew or, in the exercise of reasonable care, should have known of the dangerous, defective, unfit and unsafe condition of the aforementioned subject appliance and the fact that it was not safe or suitable for its intended use, nor of

merchantable, safe or operational quality.

137.   As a direct, legal and proximate result of the breaches of warranties on the part of the defendants, the subject appliance severely electrically shocked the plaintiff.

138.   The aforementioned breaches of warranties of the defendants directly, legally and proximately caused injuries and losses to plaintiff as herein described.

139.   As a direct, legal and proximate result of the breaches of warranties of all of the defendants, and the defective nature of the subject appliance, plaintiff suffered and sustained injuries, harm and losses, including loss and damage to valuable tangible items of personal property and other compensable damages within the jurisdiction of the Court.

140.   Due to said defects in the subject appliance, plaintiff suffered injuries and losses when the subject appliance failed to function adequately, safely, or as designed.

141.   As a direct, legal and proximate result of the negligence, breach of implied warranty, and carelessness on the part of the defendants, the subject appliance severely electrically shocked plaintiff.

142.   The defective and dangerous design, manufacture and performance of the subject appliance and the fact that it was unsafe for its intended use and purpose when employed in a reasonable and foreseeable manner by plaintiff was known to defendants, or in the exercise of reasonable care should have been known and discovered by the defendants, and each of them.  Further, the defective and dangerous condition of the subject appliance were not made known to plaintiff by defendants.

143.   Plaintiff is informed and believes and thereupon alleges that defendants knew of the danger of serious injury or death from said subject appliance due to the defectively designed and manufactured nature of the subject appliance and said defendants consciously decided to design, manufacture, distribute and/or sell said subject appliance in its defective state without adequate warning or proper instructions to owners and users of said appliance.

144.   Further, plaintiff is informed and believes and thereupon asserts that defendants knew or in the exercise of reasonable care should have known of the many

-28-

other earlier deaths, injuries, consumer complaints and lawsuits involving substantially similar electrical shocks caused by the subject appliance and its model line, including earlier versions and similar products, due to the inadequate and improper warnings and instructions, and said design and manufacturing defects, and failure to warn regarding electrocution and said other defects, said defendants nevertheless chose not to design, redesign or repair the subject appliance in a proper and defect free manner, properly and fully recall the product in a timely manner, and/or adequately warn of the defects and dangers.

145.   In addition, plaintiff is informed and believes and thereupon alleges that the aforementioned acts, omissions, and negligence by defendants, were done by employees of defendants, and each of them with the advance knowledge, authorization, approval, participation or ratification of the officers, directors and/or managing agents of defendants, and each of them.

146.   Plaintiff is informed and believes and thereupon alleges that information in the possession of defendants inclusive and each of them, regarding the defective and dangerous condition of the subject appliance moved upward through the structure of management to a point where corporate policy was formulated.

147.   Plaintiff is informed and believes and thereupon alleges that corporate policymakers and other persons who exercised discretionary authority and were authorized to make corporate policy on behalf of defendants, were in fact aware of risks to the safety of others posed by the defective and dangerous condition of the subject appliance and chose not to take any corrective action.

148.   Plaintiff is informed and believes and thereupon alleges that authorized persons within the corporate hierarchy of the defendants acted negligently, in that corporate policymakers and other persons who exercised discretionary authority and were authorized to make corporate policy decisions on behalf of said defendants did in fact compromise consumer safety by reducing costs and/or expediting production of the subject appliance.

149.   As a further direct and proximate result of the above-described acts by defendants, plaintiff has been harmed in that she has suffered and will continue to suffer mental anguish, and severe emotional and physical distress.  Said damages are in a sum in excess of the jurisdictional limit of this Court, the exact amount of which is not yet known to plaintiff, but which amount will be proven at the time of trial.

150.   As a further direct and proximate result of the acts and omissions of defendants, plaintiff has sustained severe and permanent injuries to her health, and severe shock to her nervous system, and was caused to suffer severe physical and mental pain.  Said damages are in a sum the exact amount of which is not yet known to plaintiff, but which amount will be proved at the time of trial.

151.   As a direct, proximate, and legal result of the acts and omissions by defendants, plaintiff suffered and will continue to suffer damages in a sum in excess of the jurisdictional limit of this Court, the exact amount of which is not yet known to plaintiff, but which amount will be proved at the time of trial.

152.   As a further direct and proximate result of the acts and omissions of defendants, plaintiff will be prevented from pursing gainful employment and/or business ventures in the future, and therefore she will suffer lost future earnings and income, and/or a diminution of her future earning capacity.  Said damages are in a sum the exact amount of which is not yet known to plaintiff, but which amount will be proved at the time of trial.

153.   As a further direct and proximate result of acts and omissions of defendants, plaintiff was required to and did employ physicians, and other medical personnel to treat and care for her, and incurred additional medical expenses for hospital bills and other incidental medical expenses.

154.   Plaintiff is informed and believes, and thereupon alleges, that he will be required to incur additional medical and sundry expenses in the future.  Said damages are in a sum the exact amount of which is not yet known to plaintiff, but which amount will be proved at the time of trial.

155.   As a further direct and proximate result of the acts and omissions of defendants, plaintiff will be prevented from pursing gainful employment and/or business ventures in the future, and therefore will suffer lost future earnings and income, and/or a diminution of her future earning capacity.  Said damages are in a sum the exact amount of which is not yet known to plaintiff, but which amount will be proved at the time of trial.

**WHEREFORE**, plaintiff LAURA TAYLOR prays for judgment against the defendants as follows:

Against all defendants, and each of them:

1.   For general damages incurred and suffered by plaintiff, including loss and damage to valuable tangible items of personal property and other compensable damages, in an amount exceeding the jurisdictional limits of this Court and according to proof at trial;

2.   For special damages, in an amount exceeding the jurisdictional limits of this Court and according to proof at trial;

3.   For costs of suit incurred herein;

4.   For interest as provided by law; and

5.   For such other and further relief as the Court may deem just and proper.

Against Defendants Doe 1 through 100, and each of them:

6.   For an award of exemplary damages, in an amount properly calculated to punish said Defendants Doe 1 through 100 for their despicable conduct, malice and conscious disregard for the safety of others, and to deter any such despicable conduct, malice and conscious disregard for the safety of others in the future.

DATED: May 30, 2013                    CARPENTER, ZUCKERMAN & ROWLEY, LLP


Sark Ohanian
Attorneys for Plaintiff

-31-

## DEMAND FOR JURY TRIAL

Plaintiff Laura Taylor, individually, hereby demands a jury trial in this action.

DATED: May 30, 2013                    CARPENTER, ZUCKERMAN & ROWLEY, LLP

Sark Ohanian
Attorneys for Plaintiff

SECOND AMENDED COMPLAINT FOR DAMAGES                    CASE NO. CV 12-9585 FMO (FFMx)

## CERTIFICATE OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

     I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 8827 West Olympic Boulevard, Beverly Hills, California 90211.

     On May 30, 2013, I served the attached document described as **FIRST AMENDED COMPLAINT FOR DAMAGES (1.) FRAUDULENT CONCEALMENT (2.) NEGLIGENCE (3.) STRICT PRODUCTS LIABILITY ; (4.) BREACH OF EXPRESS WARRANTY (5.) BREACH OF IMPLIED WARRANTY** on all interested parties in this action by the following method:

Levi Heath, Esq.
Devin Stone, Esq.
BARNES & THORNBURG, LLP
2049 Century Park East, Suite 3550
Los Angeles, California 90067
Telephone No.: (310) 284-3880
Facsimile No.:  (310) 284-3894
***Attorneys for Defendants,* WHIRLPOOL CORPORATION, MAYTAG CORPORATION AND MAYTAG SALES, INC.**

Christopher T. Olsen, Esq.
Mark Brueggmann, Esq.
CLINTON & CLINTON
100 Oceangate, Fourteenth Floor
Long Beach, CA 90802
Telephone No.: (562) 216-5000
***Attorneys for Defendants,* BEST BUY**

X    **BY MAIL:** I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. I am readily familiar with the business practice at my place of business for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.

☒    FEDERAL - I declare under penalty of perjury under the laws of the State of California and the United States that the above is true and correct.

☒    EXECUTED on May 30, 2013, at Beverly Hills, California.

                            _____
                                Robert Mendoza

SECOND AMENDED COMPLAINT FOR DAMAGES         CASE NO. CV 12-9585 FMO (FFMx)